**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| QUANTEFI CORP.<br><br>*Plaintiff*,<br><br>vs.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>*Defendants*. | CASE NO.  2:26-cv-00377<br><br><br>**Complaint for Patent Infringement**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR
PATENT INFRINGEMENT AGAINST HPE**

Plaintiff QuanteFi Corporation ("QuanteFi") files this complaint against Defendants Hewlett Packard Enterprise Company ("HPE" or "Defendants"), alleging infringement of U.S. Patent Nos. 9,331,883 (the "'883 patent"), 10,368,360 (the "'360 patent"), and 11,258,500 (the "'500 patent") (collectively, the "Asserted Patents").

**BACKGROUND**

1.      This complaint arises from Defendant's infringement of the following United States patents owned by QuanteFi, each of which relates to wireless communications technology and standardized wireless functionality: U.S. Patent Nos. 9,331,883 (the "'883 patent"), 10,368,360 (the "'360 patent"), and 11,258,500 (the "'500 patent") (collectively, the "Asserted Patents").

2.      The infringement allegations in this Complaint are based on standards-driven implementations of IEEE 802.11 wireless technologies, including Wi-Fi multi-user MIMO operation, Wi-Fi activity tracking, and Wi-Fi sounding and beamforming.

1

## PLAINTIFF QUANTEFI AND THE ASSERTED PATENTS

3.      Plaintiff QuanteFi Corporation is a corporation organized under the laws of Delaware, with its principal place of business at 603 East Milwaukee Street, Suite 200 Detroit, MI 48202.

4.      QuanteFi is the owner of U.S. Patent No. 9,331,883, titled "Wireless Home Network Supporting Concurrent Links to Legacy Devices," which issued on May 3, 2016. A copy of the '883 patent is attached to this Complaint as Exhibit 1.

5.      QuanteFi is the owner of U.S. Patent No. 10,368,360, titled "Network event based security and home automation," which issued on July 30, 2019. A copy of the '360 patent is attached to this Complaint as Exhibit 2.

6.      QuanteFi is the owner of U.S. Patent No. 11,258,500, titled "Hybrid Sector Selection and Beamforming," which issued on February 22, 2022. A copy of the '500 patent is attached to this Complaint as Exhibit 3.

## DEFENDANT AND THE ACCUSED INSTRUMENTALITIES

7.      Defendant Hewlett Packard Enterprise Company is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1701 E Mossy Oaks Road, Spring, Texas 77389. Hewlett Packard Enterprise Company has as its registered agent for service: C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. Hewlett Packard Enterprise Company has been registered to do business in the state of Texas under Texas SOS file number 802175187.

8.      The Accused Instrumentalities include, without limitation, Defendant's Wi-Fi 6 and Wi-Fi 7 capable gateways, routers, extenders, hotspots, clients, access points, and related WLAN products and services that implement the IEEE 802.11 functionality described below.

2

## JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, Title 35 of the United States Code.

10.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b).

12.      HPE is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

13.      This Court has general and specific personal jurisdiction over the Defendants under the laws of the State of Texas at least because HPE has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over HPE would not offend traditional notions of fair play and substantial justice. HPE, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in Texas, and commit acts of infringement of QuanteFi's patents in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the asserted patents, including without limitation the HPE Accused Instrumentalities.

14.      Defendant, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and

used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

15.    Venue is also proper in this district because Defendant has a regular and established place of business and has committed acts of infringement in this district. For example, HPE has a regular and established place of business, including, e.g., a permanent physical presence at 6080 Tennyson Parkway, Suite 400, Plano, Texas 75024.

## COUNT 1 – INFRINGEMENT OF THE '883 PATENT

16.    QuanteFi incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

17.    On May 3, 2016, the U.S. Patent and Trademark Office issued U.S. Patent No. 9,331,883, titled titled "Wireless Home Network Supporting Concurrent Links to Legacy Devices." Ex. 1.

18.    QuanteFi is the owner of the '883 patent with full rights to pursue recovery of royalties and damages for infringement, including full rights to recover past and future damages.

19.    The written description of the '883 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

20.    QuanteFi and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '883 in that QuanteFi is unaware of an articles subject to a duty to mark, and QuanteFi is entitled to damages for Defendants' past infringement.

21. On information and belief, Defendant makes, uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Instrumentalities are, for example, Wi-Fi 6 and later wireless access points, gateways, routers, and other wireless networking products that support updated Multi-User MIMO ("MU-MIMO") technology, that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the 883 Patent.

22. The Accused Products satisfy all claim limitations of one or more claims of the 883 Patent. On information and belief, the Accused Instrumentalities employ, implement, or utilize materially the same updated MU-MIMO technology, such that facts material to infringement by one Accused Instrumentality will be material to others.

23. With respect to 1[pre], the Accused Instrumentalities include "A wireless access point (WAP) apparatus having a plurality of antennas and supporting multiple-input multiple-output (MIMO) wireless communications with associated station nodes on a selected one of a plurality of orthogonal frequency division multiplexed (OFDM) communication channels":

### 3. Definitions, acronyms, and abbreviations

#### 3.1 Definitions

**access point:** (AP) An entity that contains one station (STA) and provides access to the distribution system services, via the wireless medium (WM) for associated STAs. An AP comprises a STA and a distribution system access function (DSAF).

**multiple input, multiple output (MIMO):** A physical layer (PHY) configuration in which the transmitter uses multiple antennas and the receiver might use multiple antennas.

**multi-user multiple input, multiple output:** [MU-MIMO] A technique by which multiple stations (STAs), each with one or more antennas, either simultaneously transmit to a single STA or simultaneously receive from a single STA independent PSDUs over the same subcarriers.

**27.1.1 Introduction to the HE PHY**

Clause 27 specifies the PHY entity for a high-efficiency (HE) orthogonal frequency division multiplexing (OFDM) system. In addition to the requirements in Clause 27, an HE STA shall support transmitting and receiving PPDUs that are compliant with the mandatory requirements of the following PHY specifications:

— Clause 19 and Clause 21 if the HE STA supports an operating channel width greater than or equal to 80 MHz and is operating in the 5 GHz band.

— Clause 19 and Clause 21 transmission and reception on 20 MHz channel width (see 26.17.1) if the HE STA is a 20 MHz-only non-AP HE STA and is operating in the 5 GHz band.

— Clause 19 if the HE STA is operating in the 2.4 GHz band.

— Clause 17 if the HE STA is operating in the 6 GHz band.

For 2.4 GHz band operation, the HE PHY is based on HT PHY defined in Clause 19, which in turn is based on the OFDM PHY defined in Clause 17.

For 5 GHz band operation, the HE PHY is based on the VHT PHY defined in Clause 21, which in turn is based on the HT PHY defined in Clause 19, which in turn is further based on the OFDM PHY defined in Clause 17.

For 6 GHz band operation, the HE PHY is based on the OFDM PHY defined in Clause 17.

The HE PHY extends the maximum number of users supported for DL MU-MIMO transmissions to 8 users per resource unit (RU) and provides support for DL and UL orthogonal frequency division multiple access (OFDMA) as well as for UL MU-MIMO. Both DL and UL MU-MIMO transmissions are supported on portions of the PPDU bandwidth (on resource units greater than or equal to 106 tones). In an MU-MIMO resource unit, there is support for up to 8 users with up to 4 space-time streams per user with the total across all users not exceeding 8 space-time streams.

The HE PHY provides support for 20 MHz, 40 MHz, 80 MHz, and 160 MHz contiguous channel widths and support for 80+80 MHz noncontiguous channel width, depending on the frequency band and capability. For

(IEEE 802.11-2024)

24.    With respect to claim 1[a], the Accused Instrumentalities include "a station grouping module configured to select a group of at least two of the associated station nodes for concurrent MIMO communication links with the WAP":

**27.3.1.1 MU transmission**

The MU transmissions include DL MU transmissions and UL MU transmissions.

DL MU transmission allows an AP to simultaneously transmit information to more than one non-AP STA. For a DL MU transmission, the AP uses the HE MU PPDU format and employs either DL OFDMA or DL MU-MIMO, or a mixture of both. UL MU transmission allows an AP to simultaneously receive information from more than one non-AP STA. UL MU transmissions are preceded by a triggering frame from the AP. The non-AP STAs transmit using the HE TB PPDU format and employ either UL OFDMA or UL MU-MIMO, or a mixture of both.

The HE PHY supports OFDMA transmissions, in both the DL and the UL where different users can occupy different RUs in a PPDU (see 27.3.10). The transmission within an RU in a PPDU may be a single stream to one user, multiple streams spatially multiplexed to one user (SU-MIMO), or multiple streams spatially multiplexed to multiple users (MU-MIMO).

NOTE—The VHT PHY supports only full-bandwidth DL MU-MIMO as described in 21.3.11.

(IEEE 802.11-2024)

25.    With respect to claim 1[b], the Accused Instrumentalities include "a transmit selector configured to determine whether all station nodes in the group support a multi-user (MU) protocol":

| HE Capabilities | As defined in HE Capabilities element | As defined in 9.4.2.247 | Specifies the parameters within the HE Capabilities element that are supported by the peer STA. The parameter is present if dot11HEOptionImplemented is true and the HE Capabilities element is present in the Association Request frame received from the STA; otherwise, this parameter is not present. |
|---|---|---|---|

A non-AP HE STA shall support the following features:

— Reception of an HE MU PPDU consisting of a single RU spanning the entire PPDU bandwidth and utilizing MU-MIMO (DL MU-MIMO). The maximum number of spatial streams per user the non-AP STA can receive in the DL MU-MIMO transmission shall be equal to the minimum of 4 and the maximum number of spatial streams supported for reception of HE SU PPDUs. The non-AP STA shall be able to receive its intended spatial streams in a DL MU-MIMO transmission with a total number of spatial streams across all users of at least 4.

(IEEE 802.11-2024, page 4135)

26.    With respect to claim 1[c], the Accused Instrumentalities include "a spatial mapper including an input and an output, configured to precode concurrent transmissions to the selected group at the input using a precode matrix 'Q' which spatially separates the concurrent MIMO transmissions to each station node in the group at the output":

**27.3.5 Transmitter block diagram**

The generation of each field in an HE PPDU uses many of the following blocks:

a)  pre-FEC PHY padding
b)  Scrambler
c)  FEC (BCC or LDPC) encoders
d)  post-FEC PHY padding
e)  Stream parser
f)  Segment parser (for contiguous 160 MHz and noncontiguous 80+80 MHz transmissions)
g)  BCC interleaver
h)  Constellation mapper
i)  DCM tone mapper
j)  Pilot insertion
k)  Replication over multiple 20 MHz (for BW > 20 MHz)
l)  Multiplication by 1st column of $P_{HE\text{-}LTF}$
m)  LDPC tone mapper
n)  Segment deparser
o)  Space time block code (STBC) encoder for one spatial stream
p)  Cyclic shift diversity (CSD) per STS insertion
q)  Spatial mapper
r)  Frequency mapping
s)  Inverse discrete Fourier transform (IDFT)
t)  Cyclic shift diversity (CSD) per chain insertion
u)  Guard interval (GI) insertion
v)  Windowing

**27.3.6.11 Construction of the Data field in an HE MU PPDU**

**27.3.6.11.1 General**

In an HE MU transmission, the PPDU encoding process is performed independently in an RU on a per user basis up to the input of the spatial mapping block, except that CSD is performed with knowledge of the space-time streams starting index for that user. All user data in an RU is combined and mapped to the transmit chains in the spatial mapping block.

**27.3.6.11.2 Using BCC**

A Data field with BCC encoding is constructed using steps a) to l) in 27.3.6.10.1 and then applying CSD for an HE MU PPDU as described in 27.3.11.2.2.

8



**Figure 27-19—Transmitter block diagram for DL MU-MIMO transmission of a Data field with BCC encoding on a 106- or 242-tone RU**

**27.3.6.11.4 Combining to form an HE MU PPDU**

The per user data is combined as follows:

a)   Spatial mapping: The $Q$ matrix is applied as described in 27.3.12.14. The combining of all user data of an RU is done in this block.

$Q_k^{(i_{Seg})}$   is the spatial mapping matrix for the subcarrier $k$ in frequency segment $i_{Seg}$. For HE modulated fields, $Q_k^{(i_{Seg})}$ is a matrix with $N_{TX}$ rows and $N_{STS,r,total}$ columns. When beamforming or DL MU-MIMO is applied, $Q_k^{(i_{Seg})}$ is a beamforming or DL MU-MIMO steering matrix that is derived from the TXVECTOR parameter EXPANSION_MAT. The beamforming steering matrices and DL MU-MIMO steering matrices are implementation specific. If the TXVECTOR parameter BEAM_CHANGE is 1 or not present, then for pre-HE modulated fields $Q_k^{(i_{Seg})}$ is a column vector with $N_{TX}$ elements with element $i_{TX}$ being $\exp(-j2\pi k\Delta_{F, \text{Pre-HE}} T_{CS}^{i_{TX}})$, where $T_{CS}^{i_{TX}}$ represents the cyclic shift for the transmitter chain whose values are defined in 27.3.11.2.1; otherwise it is identical to the spatial mapping $Q_k^{(i_{Seg})}$ for HE modulated fields.

$Q_{k,u}^{(i_{Seg})}$   is the spatial mapping matrix for user $u$ on subcarrier $k$ in frequency segment $i_{Seg}$. For HE modulated fields, $Q_{k,u}^{(i_{Seg})}$ is a matrix with $N_{TX}$ rows and $N_{STS,r,u}$ columns. For pre-HE modulated fields, $Q_{k,u}^{(i_{Seg})}$ is a column vector with $N_{TX}$ elements with element $i_{TX}$ being $\exp(-j2\pi k\Delta_{F, \text{Pre-HE}} T_{CS}^{i_{TX}})$, where $T_{CS}^{i_{TX}}$ represents the cyclic shift for the transmitter chain whose values are defined in 27.3.11.2.1.

(IEEE 802.11-2024)

27.    With respect to claim 1[d], the Accused Instrumentalities include "an output injector coupled to the output of the spatial mapper and configured to inject preambles for synchronizing timing of the MIMO transmissions at the output of the spatial mapper, responsive to an affirmative determination by the transmit selector":



**Figure 27-23—Timing boundaries for HE PPDU fields if midamble is not present**

### 27.3.11.10 HE-LTF field

The HE-LTF field provides a means for the receiver to estimate the MIMO channel between the set of constellation mapper outputs (or, if STBC is applied, the STBC encoder outputs) and the receive chains. In

The generation of the time domain symbol of a 1x HE-LTF is equivalent to modulating every 4 subcarriers in an OFDM symbol of 12.8 μs excluding GI and then transmitting only the first 1/4 of the OFDM symbol in the time domain, as shown in Figure 27-34.



**Figure 27-34—Generation of 1x HE-LTF symbols per frequency segment** (IEEE 802.11-2024)

28.    With respect to claim 1[e], the Accused Instrumentalities include "an input injector coupled to the input of the spatial mapper and configured to inject preambles before precoding in the spatial mapper, responsive to a negative determination by the transmit selector, whereby transmission preambles are precoded when at least one station node in the group does not support the MU protocol":

11



**Figure 27-13—Transmitter block diagram for L-SIG, RL-SIG, and HE-SIG-A fields for an HE SU PPDU and HE ER SU PPDU if Beam Change subfield is 1**

Figure 27-17 shows the transmitter blocks for the UL transmission or DL non-MU-MIMO transmission of a Data field with BCC encoding on a 26-, 52-, 106-, or 242-tone RU for a single frequency segment if the number of spatial streams is less than or equal to 4. Figure 27-17 applies to the Data field of an HE MU PPDU that is transmitted on an RU allocated to a single user, the Data field of an HE SU PPDU, and the Data field of an HE TB PPDU (regardless of whether it is spatially multiplexed with other users).

The DCM tone mapper, which is part of the constellation mapper, is applied only if DCM is indicated for the RU. A subset of these transmitter blocks consisting of the constellation mapper and CSD blocks and the blocks to the right of, and including, the spatial mapping block is also used to generate the HE-LTF fields. This is illustrated in Figure 27-32 (in 27.3.11.10). A subset of these transmitter blocks consisting of the constellation mapper and CSD blocks and the blocks to the right of, and including, the spatial and frequency mapping block of Figure 27-17 is also used to generate the HE-STF field. This figure also applies to the Data field with BCC encoding in an HE TB PPDU.



**Figure 27-17—Transmitter block diagram for UL transmission or DL non-MU-MIMO transmission of a Data field with BCC encoding on a 26-, 52-, 106-, or 242-tone RU**

(IEEE 802.11-2024)

29.    Defendants knowingly and intentionally induce and contribute to infringement of the '883 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or have been willfully blind to the '883 patent and the infringing nature of the Accused Instrumentalities at least because of their historical monitoring of industry standards and

through at least the filing and service of this Complaint.

30.     Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '883 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '883 patent, thereby specifically intending for and inducing their customers to infringe the '883 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

31.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '883 patent.

32.     Defendants have induced, and continue to induce, infringement of the '883 patent by actively encouraging others (including customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

33.     QuanteFi has been damaged by Defendants' infringement of the '883 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

13

**COUNT 2 – INFRINGEMENT OF THE '360 PATENT**

34.    QuanteFi incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

35.    On July 30, 2019, the U.S. Patent and Trademark Office issued U.S. Patent No. 10,368,360, titled "Network event based security and home automation." Ex. 2.

36.    QuanteFi is the owner of the '360 patent with full rights to pursue recovery of royalties and damages for infringement, including full rights to recover past and future damages.

37.    The written description of the '360 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    QuanteFi and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '360 patent in that QuanteFi is unaware of an articles subject to a duty to mark, and QuanteFi is entitled to damages for Defendants' past infringement.

39.    On information and belief, Defendant makes, uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Instrumentalities are, for example, wireless access points and infrastructure, including for example Aruba InstantOn, that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the '360 patent.

40.    The Accused Products satisfy all claim limitations of one or more claims of the '360 patent. On information and belief, the Accused Instrumentalities employ, implement, or utilize materially the same 5G bandwidth-part technology, such that facts material to infringement by one Accused Instrumentality will be material to others.

41.    With respect to 1[pre], the Accused Instrumentalities perform "a method for operating a wireless access point (WAP) configured to support wireless communications with wireless stations on at least one selected wireless communication channel on a wireless local area network (WLAN).":





(https://www.hpe.com/us/en/instant-on/how-it-works.html )

42.    With respect to claim 1[a], the Accused Instrumentalities perform "monitoring data link layer activity for each wireless station at a location of the WAP to track wireless stations that transmit at the location of the WAP, wherein a table of tags is generated to track the wireless stations":

15



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing exemplary table of tags generated to track wireless stations (green boxes), monitoring of data link layer activity (blue box), and wireless station at a location of the WAP (red box).)

43.    With respect to claim 1[b], the Accused Instrumentalities perform "detecting data link layer activity associated with at least one wireless station at the location of the WAP":

**basic service set (BSS) max idle period:** [BSS max idle period] A time period during which the access point (AP) does not disassociate a station (STA) due to nonreceipt of frames from that STA.

### 4.3.5 Distribution system (DS) concepts

### 4.3.5.1 Overview

An access point (AP) is any entity that has STA functionality and a distribution system access function (DSAF), which enables access to the DS, via the WM for associated STAs. To access the DS, a non-AP STA joins a BSS and associates with the AP operating that BSS. The AP notifies the DS at the completion of the

### 4.4.4 DSS

The services that comprise the DSS are as follows:

    a)   Association (not mesh facility)

    b)   Disassociation (not mesh facility)

    c)   Distribution

    d)   Integration

    e)   Reassociation (not mesh facility)

    f)   QoS traffic scheduling (QoS facility only)

    g)   DSE

    h)   Interworking with the DS (mesh facility only)

DSSs are specified for use by MAC sublayer entities.

(Excerpts from IEEE Std 802.11-2024: Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications.)

### 6.5.9 Disassociate

### 6.5.9.1 MLME-DISASSOCIATE.request

### 6.5.9.1.1 Function

This primitive requests disassociation with a specified peer MAC entity.

### 6.5.9.1.2 Semantics of the service primitive

The primitive parameters are as follows:
```
MLME-DISASSOCIATE.request(
                    PeerSTAAddress,
                    ReasonCode,
                    VendorSpecificInfo
                    )
```

| Name | Type | Valid range | Description |
|---|---|---|---|
| PeerSTAAddress | MAC address | Any valid individual address, or the broadcast address | Specifies the address of the peer MAC entity or entities with which to perform the disassociation process. |
| ReasonCode | Reason Code field | As defined in 9.4.1.7 | Specifies the reason for initiating the disassociation procedure. |
| VendorSpecificInfo | A set of elements | As defined in 9.4.2.24 | Zero or more elements. |

(Excerpts from IEEE Std 802.11-2024: Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications.)

17

**Table 9-79—Reason codes**

| Reason code | Name | Meaning |
|---|---|---|
| 0 | | Reserved |
| 1 | UNSPECIFIED_REASON | Unspecified reason |
| 2 | INVALID_AUTHENTICATION | Previous authentication no longer valid |
| 3 | LEAVING_NETWORK_DEAUTH | Deauthenticated because sending STA is leaving (or has left) the BSS |
| 4 | REASON_INACTIVITY | Disassociated due to inactivity |
| 5 | NO_MORE_STAS | Disassociated because AP is unable to handle all currently associated STAs |
| 6 | INVALID_CLASS2_FRAME | Class 2 frame received from nonauthenticated STA |
| 7 | INVALID_CLASS3_FRAME | Class 3 frame received from nonassociated STA |

(Excerpts from IEEE Std 802.11-2024: Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications.)



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing InstantOn system detecting an individual wireless station going offline.)

44.     With respect to claim 1[c], the Accused Instrumentalities perform "determine a

18

network event that corresponds to the detected data link layer activity associated with the at least one wireless station at the location of the WAP, wherein one or more network event rules are based on at least a network event to initiate an action for a targeted device":

## Adding or Removing Clients from a Watchlist

The client watchlist feature allows you to monitor the status of the wired, wireless, or VPN clients connected to the Instant On devices. After the client is added to the watchlist, an alert is triggered when the watched client goes offline and is cleared if the client comes back online or removed from the watchlist.

([https://instant-on.hpe.com/techdocs/en/content/clients/mobile/client-details.htm](https://instant-on.hpe.com/techdocs/en/content/clients/mobile/client-details.htm))



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing InstantOn system detecting the network event of an individual wireless station going offline, resulting in a rules-based action initiation of an alert being raised.)

45.     With respect to claim 1[d], the Accused Instrumentalities perform "identifying the tag associated with each of the at least one wireless station of the detected data link layer activity indicating the network event":

19



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing identification of tag (device name, green box) associated with the disconnection event.))

46.    With respect to claim 1[e], the Accused Instrumentalities perform "determining a network event rule that corresponds with the detected network event for the identified tag of the at least one wireless station":

## Adding or Removing Clients from a Watchlist

The client watchlist feature allows you to monitor the status of the wired, wireless, or VPN clients connected to the Instant On devices. After the client is added to the watchlist, an alert is triggered when the watched client goes offline and is cleared if the client comes back online or removed from the watchlist.

(https://instant-on.hpe.com/techdocs/en/content/clients/mobile/client-details.htm)



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing alert raised via network event rule (blue boxes) upon disconnection event associated with identified tag (green box).)

47.    With respect to claim 1[e], the Accused Instrumentalities perform "initiating the action prescribed for the corresponding targeted device in response to satisfying the network event rule for the network event of the detected data link layer activity":

## Adding or Removing Clients from a Watchlist

The client watchlist feature allows you to monitor the status of the wired, wireless, or VPN clients connected to the Instant On devices. After the client is added to the watchlist, an alert is triggered when the watched client goes offline and is cleared if the client comes back online or removed from the watchlist.

(https://instant-on.hpe.com/techdocs/en/content/clients/mobile/client-details.htm)

21



(Annotated screenshots of operational InstantOn deployment (version 3.3.4.0), showing alert raised via network event rule (blue boxes) upon disconnection event associated with identified tag (green box).)

48.    Defendants knowingly and intentionally induce and contribute to infringement of the '360 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or have been willfully blind to the '360 patent and the infringing nature of the Accused Instrumentalities at least because of their historical monitoring of industry standards and through at least the filing and service of this Complaint.

49.    Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '360 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '360 patent, thereby specifically intending for and inducing their customers to infringe the '360 patent through the normal and

customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

50.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '360 patent.

51.     Defendants have induced, and continue to induce, infringement of the '360 patent by actively encouraging others (including customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions on the use of the Accused Instrumentalities; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

52.     QuanteFi has been damaged by Defendants' infringement of the '360 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT 3 – INFRINGEMENT OF THE '500 PATENT

53.     QuanteFi incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

54.     On February 22, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,258,500, titled "Hybrid Sector Selection and Beamforming." Ex. 3.

55.     QuanteFi is the owner of the '500 patent with full rights to pursue recovery of royalties and damages for infringement, including full rights to recover past and future damages.

56.     The written description of the '500 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.    QuanteFi and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '500 patent [in that QuanteFi is unaware of an articles subject to a duty to mark, and QuanteFi is entitled to damages for Defendants' past infringement.

58.    On information and belief, Defendant makes, uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Instrumentalities are, for example, Wi-Fi 6 and later wireless products that support HE sounding with OFDMA Resource Unit ("RU") technology, that directly infringe, literally and/or under the doctrine of equivalents, at least Claim 1 of the 500 Patent.

59.    The Accused Products satisfy all claim limitations of one or more claims of the 500 Patent. On information and belief, the Accused Instrumentalities employ, implement, or utilize materially the same HE sounding with OFDMA RU technology, such that facts material to infringement by one Accused Instrumentality will be material to others.

60.    With respect to claim 1[a], the Accused Instrumentalities perform "configuring a pattern of a sounding packet of a first wireless node in a resource space," including "assigning a first plurality of precoders to a first subset of the resource space for a first antenna sector of the first wireless node," and "assigning a second plurality of precoders to a second subset of the resource space for the second antenna sector of the first wireless node":

24

## 26.7 HE sounding operation

### 26.7.1 General

Transmit beamforming and DL MU-MIMO require knowledge of the channel state to compute a steering matrix that is applied to the transmit signal to optimize reception at one or more receivers. HE STAs use the HE sounding protocol to determine the channel state information. The HE sounding protocol provides explicit feedback mechanisms, defined as HE non-trigger-based (non-TB) sounding and HE trigger-based (TB) sounding, where the HE beamformee measures the channel using a training signal (i.e., an HE sounding NDP) transmitted by the HE beamformer and sends back a transformed estimate of the channel state. The HE beamformer uses this estimate to derive the steering matrix.



**Figure 26-7—Example of HE non-TB sounding**



**Figure 26-8—Example of HE TB sounding**

## 27.3.16 SU-MIMO and DL MU-MIMO beamforming

### 27.3.16.1 General

SU-MIMO and DL MU-MIMO beamforming are techniques used by a STA with multiple antennas (the beamformer) to steer signals using knowledge of the channel to improve throughput. With SU-MIMO



**Figure 27-17—Transmitter block diagram for UL transmission or DL non-MU-MIMO transmission of a Data field with BCC encoding on a 26-, 52-, 106-, or 242-tone RU**



**Figure 9-79—HE NDP Announcement frame format**



**Figure 9-80—STA Info field format in an HE NDP Announcement frame if the AID11 subfield is not 2047**



**Figure 9-81—Partial BW Info subfield format**

26



**Figure 9-81—Partial BW Info subfield format**

The RU Start Index subfield in the Partial BW Info subfield indicates the first 26-tone RU for which the HE beamformer is requesting feedback. The RU End Index subfield of the Partial BW Info subfield indicates the last 26-tone RU for which the HE beamformer is requesting feedback. The value of the RU Start Index subfield is less than or equal to the value of the RU End Index subfield. The RU Start Index subfield and RU

**Table 26-4—Settings for BW, RU Start Index, and RU End Index fields in HE NDP Announcement frame**

| Partial bandwidth supported by HE beamformer | Operating channel width of the HE beamformee (MHz) | Bandwidth of HE NDP Announcement frame | RU Start Index field | RU End Index field |
|---|---|---|---|---|
| No | 20, 40, 80, 160/80+80 | 20 MHz | 0 | 8 |
| Yes | 20, 40, 80, 160/80+80 | | 0–8 | 0–8 |
| No | 40, 80, 160/80+80 | 40 MHz | 0 | 17 |
| Yes | 40, 80, 160/80+80 | | 0–17 | 0–17 |
| No | 80, 160/80+80 | 80 MHz | 0 | 36 |
| Yes | 80, 160/80+80 | | 0–36 | 0–36 |
| No | 160/80+80 | 160 MHz or 80+80 MHz | 0 | 73 |
| Yes | 160/80+80 | | 0–73 | 0–73 |
| NOTE 1—The value of the RU Start Index field is always less than or equal to the value of the RU End Index field. | | | | |
| NOTE 2—Partial BW feedback can be solicited only with an HE TB sounding sequence and cannot be solicited with an HE non-TB sounding sequence. | | | | |

## 27.3.17 HE sounding NDP

The HE sounding NDP is a variant of the HE SU PPDU. The format of an HE sounding NDP is defined in Figure 27-46.



**Figure 27-46—HE sounding NDP format**

27

### 27.3.11.10 HE-LTF field

The HE-LTF field provides a means for the receiver to estimate the MIMO channel between the set of constellation mapper outputs (or, if STBC is applied, the STBC encoder outputs) and the receive chains. In an HE SU PPDU and HE ER SU PPDU, the transmitter provides training for $N_{STS}$ space-time streams (spatial mapper inputs) used for the transmission of the PSDU. In an HE MU PPDU, the transmitter provides training for $N_{STS,r,total}$ space-time streams used for the transmission of the PSDU(s) in the $r^{th}$ RU. In an HE TB PPDU, the transmitter of user $u$ in the $r^{th}$ RU provides training for $N_{STS,r,u}$ space-time streams used for the transmission of the PSDU. For each subcarrier in the $r^{th}$ RU, the MIMO channel that can be estimated is an $N_{RX} \times N_{STS,r,total}$ matrix. An HE transmission has a preamble that contains HE-LTF symbols, where the data tones of each HE-LTF symbol are multiplied by entries belonging to a matrix $P_{HE-LTF}$, to enable channel estimation at the receiver. When single stream pilot is used in HE-LTF, the pilot subcarriers of each

### 27.3.6.9 Construction of HE-LTF field

The HE-LTF field is defined in 27.3.11.10 and is constructed as follows:

a)   Sequence generation: Generate the HE-LTF sequence in frequency domain over the bandwidth indicated by CH_BANDWIDTH as described in 27.3.11.10. Apply a 3 dB power boost if transmitting an HE ER SU PPDU as described in 27.3.11.10.

b)   $A_{HE-LTF}$ matrix mapping: Apply the $P_{HE-LTF}$ matrix to the data tones of the HE-LTF sequence, and apply the $R_{HE-LTF}$ matrix to pilot subcarriers of the HE-LTF sequence, except the UL MU-MIMO transmission not using HE single stream pilot HE-LTF mode as described in 27.3.11.10. There is no pilot mapping for an HE TB feedback NDP.

c)   CSD: Apply CSD for each space-time stream and frequency segment as described in 27.3.11.2.2.

d)   Spatial mapping: Apply the $Q$ matrix as described in 27.3.11.10.

e)   IDFT: Compute the inverse discrete Fourier transform.

f)   GI and windowing: Prepend a GI indicated by the TXVECTOR parameter GI_TYPE, and apply windowing as described in 27.3.10.

g)   Analog and RF: Upconvert the resulting complex baseband waveform associated with each transmit chain to an RF signal according to the center frequency of the desired channel and transmit. Refer to 27.3.10 and 27.3.11 for details.



**Figure 27-35—Generation of 2x HE-LTF symbols per frequency segment**

(IEEE 802.11-2024)

61.    With respect to claim 1[b], the Accused Instrumentalities "wirelessly transmit[] the sounding packet with the configured pattern to a second wireless node":

## 26.7 HE sounding operation

### 26.7.1 General

Transmit beamforming and DL MU-MIMO require knowledge of the channel state to compute a steering matrix that is applied to the transmit signal to optimize reception at one or more receivers. HE STAs use the HE sounding protocol to determine the channel state information. The HE sounding protocol provides explicit feedback mechanisms, defined as HE non-trigger-based (non-TB) sounding and HE trigger-based (TB) sounding, where the HE beamformee measures the channel using a training signal (i.e., an HE sounding NDP) transmitted by the HE beamformer and sends back a transformed estimate of the channel state. The HE beamformer uses this estimate to derive the steering matrix.



**Figure 26-7—Example of HE non-TB sounding**



**Figure 26-8—Example of HE TB sounding**



**Figure 27-17—Transmitter block diagram for UL transmission or DL non-MU-MIMO transmission of a Data field with BCC encoding on a 26-, 52-, 106-, or 242-tone RU**

29



Figure 9-79—HE NDP Announcement frame format



Figure 9-80—STA Info field format in an HE NDP Announcement frame if the AID11 subfield is not 2047



Figure 9-81—Partial BW Info subfield format

**channel:** An instance of use of the wireless medium (WM) for the purpose of passing physical layer (PHY) protocol data units (PDUs) between two or more stations (STAs).

(IEEE 802.11-2024)

62.     With respect to claim 1[c], the Accused Instrumentalities perform "transmitting data packets from the first wireless node to the second wireless node according to one or more transmission parameters that are at least one of received from the second wireless node or determined based on channel state information (CSI) feedback received from the second wireless node, wherein the one or more transmission parameters include at least one of transmit antenna state and a beamforming matrix to send data packets from the first wireless node to the second wireless node":

**26.7 HE sounding operation**

**26.7.1 General**

Transmit beamforming and DL MU-MIMO require knowledge of the channel state to compute a steering matrix that is applied to the transmit signal to optimize reception at one or more receivers. HE STAs use the HE sounding protocol to determine the channel state information. The HE sounding protocol provides explicit feedback mechanisms, defined as HE non-trigger-based (non-TB) sounding and HE trigger-based (TB) sounding, where the HE beamformee measures the channel using a training signal (i.e., an HE sounding NDP) transmitted by the HE beamformer and sends back a transformed estimate of the channel state. The HE beamformer uses this estimate to derive the steering matrix.

The HE beamformee returns an estimate of the channel state in an HE compressed beamforming/CQI report carried in the HE Compressed Beamforming/CQI Report field. There are three types of HE compressed beamforming/CQI report:
— SU feedback: The HE Compressed Beamforming/CQI Report field consists of an HE Compressed Beamforming Report field.
— MU feedback: The HE Compressed Beamforming/CQI Report field consists of an HE Compressed Beamforming Report field and HE MU Exclusive Beamforming Report field.
— CQI feedback: The HE Compressed Beamforming/CQI Report field consists of an HE CQI Report field.

(IEEE 802.11-2024)

63.     Defendants knowingly and intentionally induce and contribute to infringement of the '500 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or were willfully blind to the '500 patent and the infringing nature of the Accused Instrumentalities at least because of their historical monitoring of industry standards and through at least the filing and service of this Complaint.

64.     Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '500 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '500 patent, thereby specifically intending for and inducing their customers to infringe the '500 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include

31

providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

65.     Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '500 patent.

66.     Defendants have induced, and continue to induce, infringement of the '500 patent by actively encouraging others (including customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

67.     QuanteFi has been damaged by Defendants' infringement of the '500 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## **JURY DEMAND**

68.     QuanteFi demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## **RELIEF REQUESTED**

QuanteFi prays for the following relief:

A.     A judgment in favor of QuanteFi that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.     A judgment and order requiring Defendants to pay QuanteFi past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than

a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C.      A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

D.      A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to QuanteFi, including, without limitation, pre-judgment and post-judgment interest;

E.      A judgement that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

F.      A finding that this case is exceptional under 35 U.S.C. § 285, and an award of QuanteFi' reasonable attorney's fees and costs; and

G.      Any and all other relief to which QuanteFi may be entitled.

Dated:   May 6, 2026

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Adam Hoffman
CA SBN 218740
Email: ahoffman@raklaw.com
Andrew Weiss
CA SBN 232974
Email: aweiss@raklaw.com
Neil A. Rubin
CA SBN 250761
Email: nrubin@raklaw.com
Christian W. Conkle
CA SBN 306374
Email: cconkle@raklaw.com
Jonathan Ma
CA SBN 312773
Email: jma@raklaw.com
Alexandra F. Easely
TX SBN 24099022
Email: aeasely@raklaw.com
Linjun Xu
(CA SBN 307667)
Email: lxu@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**QuanteFi Research LLC**

34